# Exhibit C

Filed
11/6/2020 1:55 PM
Anne Lorentzen
District Clerk
Nueces County, Texas

NO. **2020CCV-61518-1**
_____

| | | |
|---|---|---|
| **HILLIARD MARTINEZ GONZALES, LLP,** | § § | **IN THE COUNTY COURT AT LAW** |
| **Plaintiff,** | § § | |
| **v.** | § § | **OF NUECES COUNTY, TEXAS** |
| **KIMBERLY L. BECK,** | § § | |
| **Defendant.** | § § | **COURT NO._____** |

## PLAINTIFF HILLIARD MARTINEZ GONZALES, LLP'S ORIGINAL PETITION, APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER, <u>REQUEST FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURE</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Hilliard Martinez Gonzales, LLP ("HMG") files this Original Petition, Application for Temporary Restraining Order, Request for Injunctive Relief, and Request for Disclosure against Defendant Kimberly L. Beck ("Beck"). In so doing, HMG respectfully states as follows:

### I.   <u>DISCOVERY CONTROL PLAN LEVEL</u>

1.     HMG intends that discovery be conducted under Discovery Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

### II.   <u>NATURE OF THE ACTION</u>

2.     This is an action for breach of contract and tortious interference with existing contracts. HMG is a Texas-based law firm that represents injured Americans nationwide. Beck is an attorney who, until recently, was a senior attorney with HMG.

3.     Following her termination from the firm due to poor job performance, Beck tortiously interfered with HMG's contracts with its clients by, among other

things, misusing HMG's confidential client information in contravention of Beck's agreement with HMG to contact HMG's clients.  Beck then misrepresented certain facts in order to convince the clients to terminate HMG and hire Beck.  By this suit, HMG seeks to stop Beck from further improper use of its proprietary, confidential information.  HMG also seeks to recoup any losses it has sustained or will sustain as a result of Beck's breach of the agreement with HMG and her tortious interference with HMG's client contracts.

### III.   PARTIES

4.   Plaintiff HMG Development Services, Inc. is a Texas Limited Liability Partnership with its principal place of business in Nueces County, Texas.

5.   Defendant Kimberly L. Beck is an Ohio resident.  She may be served with process by serving her at her address, 1412 Pleasant Street, Cincinnati, Ohio 45202, or wherever she may be found.

### IV.   JURISDICTION AND VENUE

6.   The court has subject matter jurisdiction over this lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

7.   The Court has personal jurisdiction over Beck because she has purposefully availed herself of the benefits and protections of Texas law by, among other things, engaging in business and contracting with HMG, which has its principal office in Texas.  More specifically, Beck entered into an agreement with HMG in Texas stating that:

> The parties hereto irrevocably submit to the jurisdiction and venue of any state or federal court sitting in or presiding over Corpus Christi, Texas over any suit, action or proceeding arising out of or relating to this Agreement, Employee's employment with the Firm or its

2

Affiliates, the services or work performed by Employee for the Firm or its Affiliates, and/or the compensation paid to Employee by the Firm or its Affiliates. **Venue shall be mandatory, and not permissive**.

Exhibit 1, ¶ 5 (emphasis added).   Beck then used information obtained through Beck's access to HMG's client files, which access HMG would never have granted to Beck had she not executed the agreement at issue.

8.      Venue is also proper in Nueces County under Section 15.002(a)(4) of the Texas Civil Practice and Remedies Code because at all times pertinent to this suit, HMG's principal office in Texas is (and indeed always has been) in Nueces County, Texas.  § 15.002(a)(4).  Further, venue is proper in Nueces County, Texas pursuant to the agreement between Beck and HMG.

## V.      RULE 47 STATEMENT

9.      Pursuant to Rule 47 of the Texas Rules of Civil Procedure, HMG states that it currently seeks monetary relief over $1,000,000.00 in this action (in addition to temporary and permanent injunctive relief).

## VI.      FACTUAL BACKGROUND

### A.      Beck's Short Tenure at HMG

10.      On November 4, 2019, Beck, representing herself to be "an individual resident of the State of Texas," executed a Confidentiality and Nondisclosure Agreement (the "Agreement") with HMG through which HMG agreed to employ Beck as a Senior Attorney.

11.      Pertinent portions of the Agreement read as follows:

. . .**Employee acknowledges and agrees that the Firm has and will continue to invest a significant amount of time, effort and expense in developing its confidential and proprietary information** described and defined below as "Confidential

3

Information," and **the Firm will suffer harm as a result of any act or omission of Employee in violation of this Section**. . ..

\* \*

Employee agrees that during his/her employment and at all times after his/her separation of employment for any reason, **Employee will not make use of or disclose, without the prior consent of the Firm, Confidential Information. . .relating to the Firm, or any of its Affiliates or clients**, and further agrees, that he/she will return to the Firm at the separation of the Employee's employment or at any other time at the Firm's request all written materials in his/her possession embodying such Confidential Information.  For purposes of this Agreement, "**Confidential Information" includes information which concerns the affairs of the Firm (including all attorneys employed or contract, all partners, all staff) or its Affiliates or clients and which the Firm could reasonably be expected to desire be held in confidence, or the disclosure of which would likely be detrimental or disadvantageous to the Firm or its Affiliates or clients,** and without limiting the generality of the foregoing, such information includes information relating to the licenses, employee training, business operating systems, **trade secrets,** technologies, services, finances, business plans, marketing plans, **legal affairs,** vendor lists, **client lists and information, potential client information, client referral source contact lists,** pricing, terms of contracts with clients, **business prospects, business opportunities, personnel assignments, personal information, non-public information, contracts and assets of the Firm, information made available to the Firm by other parties under a confidential relationship, and information conveyed or assigned to the Firm by Employee or conceived, compiled, created, developed, discovered or obtained by Employee from and during his/her employment relationship with the Firm, whether solely by the Employee or jointly with others**.

Exhibit 1, Confidentiality and Non-Disclosure Agreement, ¶ 2 (emphasis added).

12.    On Friday, October 2, 2020, HMG terminated Beck as an employee. Despite the Agreement's clear and unambiguous language preventing Beck from wrongfully utilizing client information and confidential contractual information that she obtained by virtue of her employment with HMG, Beck sent communications to a number of clients that HMG actively represents in mass tort litigation.

4

13.     One of these emails, sent on Wednesday, October 7, 2020, stated as follows:

> Hi ██████████████!
>
> This is Kim Beck.  As you can likely see from my new email address, I have exciting news!  I have separated from HMG and I've started my own firm!  I'm sorry if I was a little cagey about this.  It's always a touchy subject if an attorney leaves and hangs out their own shingle.
>
> I am (hopefully) bringing some of the great help with me from HMG into this new venture.
>
> What this means for you:  I would love for you all to come with me to my firm.  One of my biggest frustrations at HMG was that my team just had so many clients (nearly 25,000 clients!) that cases like ███████ did not always get as much attention as we all felt like they deserved.
>
> The decision is of course yours.  You can stay with HMG, or I can tell HMG to just send me your files and I'll just keep working on the cases as I have been, or you could decide to go with someone else entirely.
>
> It does mean that you will probably want to cancel the zoom for this afternoon.  I will reach out to ████████████ and let them know that they should go ahead and cancel as well.  Otherwise, I am happy to have a call or zoom with you this afternoon, and we can talk about the change in circumstances, or I can tell you my thoughts about these cases moving forward.  I would just have to send out a different zoom link.
>
> Please let me know what you would like to do both about the zoom call this afternoon and about whether you want to come over to the new firm.
>
> Kim

Exhibit 2 [redacted to remove identifying client information].

14.     Beginning on October 29, 2020, Beck has transmitted documents to HMG purporting to be signed requests from nearly fifty of HMG's clients that their files be transferred to Ms. Beck.  The requests, however, do not state whether each client intends to terminate HMG's representation altogether.  Without clarity on

5

that subject, it is impossible for HMG either to continue to represent the client or to properly release its clients' files—which contain protected confidential client information, both privileged and unprivileged—to Beck.  Beck has thus used HMG's own Confidential Information to interfere with, obstruct, and frustrate HMG's ability to represent its own clients.

15.    This conduct is in direct and clear violation of the Agreement that Beck executed, and which is still in effect despite her termination from HMG.  *See* Exhibit 1.  If Beck is not restrained from this violative conduct, HMG will suffer immediate and irreparable harm.

## VII.  <u>CAUSES OF ACTION</u>

### COUNT I:
### BREACH OF CONTRACT AGAINST BECK

16.    HMG incorporates each of the foregoing paragraphs as if set forth fully herein.  The Agreement between Beck and HMG and its clients constitutes a valid and enforceable contract.   HMG performed all of its obligations under the Agreement.   Beck breached the Agreement by, among other things, improperly using HMG's confidential information after Beck's employment was terminated. HMG notified Beck of her breach of the Agreement and her improper use of HMG's information, yet Beck continued to contact HMG's clients in an effort to persuade them to terminate HMG and hire Beck.  These breaches were a material and willful breach of agreement between HMG and Beck.  As a direct and proximate result of these breaches, HMG has been damaged within the jurisdictional limits of the Court.

## COUNT II:
## TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

17.   HMG incorporates each of the foregoing paragraphs as if set forth fully herein.  Beck knew of the existing contracts between HMG and its clients, and actively encouraged those clients (i.e., Beck's potential clients) to terminate their contracts with HMG and to hire Beck and her firm instead.  Beck's tortious interference proximately caused injury to HMG, resulting in damages including, but not limited to, the loss of the full contingency fee to which it would have been entitled for each client's case.

## VIII.  <u>APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION</u>

18.   HMG incorporates each of the foregoing paragraphs as if set forth fully herein.

19.   A temporary restraining order may be granted without notice to the adverse party if it is clear that "immediate irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon."  Tex. R. Civ. P. 680.  Pursuant to Texas Rule of Civil Procedure 680, it is essential that the Court immediately issue a temporary order restraining Beck until a hearing can be held.  *See* Exhibit 3, Affidavit of Robert C. Hilliard.

20.   HMG requests that the Court temporarily restrain Beck from:

- obtaining, appropriating, or otherwise using HMG's Confidential Information as defined in and prohibited by the Agreement;

- making unsolicited contact with HMG's current clients who Beck has not already contacted;

- improperly accessing, using, or continuing to access or use HMG's Confidential Information as defined in the Agreement; and

- otherwise violating the terms of the Agreement.

21.     To be entitled to temporary injunctive relief, an applicant "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.*

22.     HMG has causes of action against Beck for breach of contract and against Beck for tortious interference with existing contracts.

23.     HMG is likely to prevail on those causes of action. With respect to the breach of contract action, there can be no dispute that Beck executed a valid agreement with HMG prohibiting Beck from using HMG's Confidential Information. Beck breached the Agreement by obtaining the Confidential Information and then using it to make unsolicited contact with HMG's clients. With respect to tortious interference with existing contracts, there can be no dispute that HMG had valid contracts with its clients, that Beck was aware of those contracts, and that Beck willfully and intentionally interfered with those contracts. This interference proximately caused damages to HMG including, but not limited to, the loss of its full contingent fee in the clients' personal injury actions.

24.     HMG seeks a temporary restraining order and injunction to preserve the status quo. *See In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) ("The purpose of

a TRO is to preserve the status quo . . . ."). The status quo is the "last, actual, peaceable, non-contested status which preceded the pending controversy." *Id.* (internal quotation marks omitted). In this case, the status quo means the world before Beck began using HMG's Confidential Information in violation of the Agreement to make unsolicited contact with HMG's clients.

25. Without a temporary restraining order and injunction, HMG will suffer imminent, irreparable harm. "[I]njunctions against trade secret violations may be necessary to provide meaningful legal protection to the owners of intellectual property." *Garth v. Staktek Corp.*, 876 S.W.2d 545, 550 (Tex. App.—Austin 1994, writ dism'd w.o.j.). "Injunctive relief is also proper to prevent a party, which has appropriated another's trade secrets, from gaining an unfair market advantage." *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 427 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Moreover, "where [as here] there is a high degree of similarity between the employee's former and future employer, it becomes likely . . . that the former's confidential information will be used and disclosed in the course of his work." *TransPerfect Translation, Inc. v. Leslie*, 594 F. Supp.2d 742, 757 (S.D. Tex. 2009) (granting preliminary injunction on the basis of threatened use of former employer's confidential information).

26. Injunctive relief is also proper when there is proof that a highly trained employee is continuing to breach a non-competition covenant. *See Hartwell's Office World, Inc. v. Systex Corp.,* 598 S.W.2d 636, 639 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Irreparable injury may be established when there is proof

that a highly trained employee is continuing to breach a non-competition covenant. *See id*.

27.     As reflected in the terms of the Agreement, HMG has no adequate remedy at law.   *See* Exhibit 1, ¶ 2(b).   Here, HMG may never be able to fully quantify the damage caused to its business by Beck's unauthorized use of its Confidential Information.

28.     Moreover, as set forth in the Agreement, HMG has no adequate remedy at law for Beck's continued breaches of the Agreement and Beck's continued interference with its contracts.  *See id*.

29.     HMG is willing to post a reasonable bond to secure the injunction.

30.     Time is of the essence.   Each day Beck's business operates and/or attempts to communicate with potential clients by using HMG's Confidential Information is another day of irreparable competitive injury to HMG.

31.     HMG certifies that there have been no previous applications for the same or similar relief and that the relief sought will not conflict with any previous order.

32.     HMG requests the Court immediately enter a Temporary Restraining Order.  HMG also requests the Court thereafter set this application for temporary injunction for hearing within 14 days and, after the hearing, enter a temporary injunction against Beck.

## IX.     PERMANENT INJUNCTION

33.     HMG incorporates the foregoing paragraphs as if set forth fully herein.

34.     HMG also requests a permanent injunction prohibiting Beck from:

- obtaining, appropriating, or otherwise using HMG's Confidential Information as defined in and prohibited by the Agreement;

- making unsolicited contact with HMG's current clients who Beck has not already contacted;

- improperly accessing, using, or continuing to access or use HMG's Confidential Information as defined in the Agreement; and

- otherwise violating the terms of the Agreement.

## X.    ATTORNEYS' FEES

35.    As a result of Beck's actions, HMG was compelled to retain the undersigned attorneys to bring and file this lawsuit.  Pursuant to Section 38.001 *et seq*. of the Texas Civil Practice and Remedies Code, an award of reasonable and necessary attorneys' fees to HMG is authorized, and would be equitable and just.

## XI.    CONDITIONS PRECEDENT

36.    All conditions precedent to HMG's recovery on its claims have occurred, have been performed, have been waived, or have otherwise been excused.

## XII.    REQUEST FOR DISCLOSURE

37.    HMG requests that, within 50 days of the service of this lawsuit, Beck disclose the information set forth in Rule 194.2 of the Texas Rules of Civil Procedure.  *See* Tex. R. Civ. P. 194.2.

## XIII.    REQUEST FOR JURY TRIAL

38.    HMG demands a jury trial and tenders the appropriate fee.

## XIV.    PRAYER FOR RELIEF

WHEREFORE, HMG respectfully requests that the Court enter:

1.    A temporary restraining order:

   a. prohibiting Beck from:

i. obtaining, appropriating, or otherwise using HMG's Confidential Information as defined in and prohibited by the Agreement;

ii. making unsolicited contact with HMG's current clients who Beck has not already contacted;

iii. improperly accessing, using, or continuing to access or use HMG's Confidential Information as defined in the Agreement; and

iv. otherwise violating the terms of the Agreement;

b. directing Beck, within five days from issuance of this Order, to disclose to HMG the identity of any person or entity (including other HMG employees) with whom or for whom Beck has shared, disclosed, discussed, or used HMG's Confidential Information as defined in the Agreement;

c. directing Beck, within five days from issuance of this Order, to disclose to HMG the identity of any persons or entities whom Beck has contacted since October 19, 2020; and

d. directing Beck to (i) immediately preserve all documents and/or information related to all claims in this case, whether in electronic form or hard copy; (ii) within five days from issuance of this Order, return to HMG all Confidential Information, including any client lists; (iii) to remove such Confidential information from Beck's computers, telephone, or other electronic devices; and (iv) to provide written certification to HMG of such removal within ten days from issuance of this Order;

2. A temporary and permanent injunction prohibiting Beck from making unsolicited contact with HMG's current clients who Beck has not already contacted; from improperly accessing, using, or continuing to access or use HMG's Confidential Information as defined in the Agreement; and from otherwise violating the terms of the Agreement; and

3. a judgment against Beck for:

(a) actual, consequential, and incidental damages;

(b) reasonable attorneys' fees and expenses as allowed by law;

(c) pre- and post-judgment interest at the maximum rate allowed by law and by statute, including the pertinent sections of the Texas Civil Practice and Remedies Code;

(d) costs of court; and

(e)     all other relief, general or special, either at law or in equity, to which HMG may be justly entitled.

Respectfully submitted,

**HILLIARD MARTINEZ GONZALES LLP**

By: */s/ Robert C. Hilliard*
    Robert C. Hilliard
    State Bar No. 09677700
    bobh@hmglawfirm.com
    Catherine Tobin Hilliard
    State Bar No. 24013642
    catherine@hmglawfirm.com
    John B. Martinez
    State Bar No. 24010212
    john@hmglawfirm.com
    Marion M. Reilly
    State Bar No. 24079195
    marion@hmglawfirm.com
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
Telephone No. (361) 882–1612
Facsimile No. (361) 882–3015


**BECK REDDEN LLP**

By: */s/ Michael E. Richardson*
    Michael E. Richardson
    Texas Bar No. 24002838
    mrichardson@beckredden.com
    Allison Standish Miller
    State Bar No. 24046440
    amiller@beckredden.com
    Marty Gatens
    Texas Bar No. 24120844
    mgatens@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas  77010
Telephone No. (713) 951–3700
Facsimile No. (713) 951–3720

**ATTORNEYS FOR PLAINTIFF**
**HILLIARD MARTINEZ GONZALES, LLC**

## Exhibit 1

### CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement ("Agreement") is made effective as of the 4th day of November 2019 (the "Effective Date") by and between Hilliard Martinez Gonzales, L.L.P., (the "Firm"), and Kimberly Beck an individual resident of the State of Texas (the "Employee"). The Firm and Employee desire to enter into this written Agreement to evidence such terms as follows:

### AGREEMENT:

1. **Employment.** The Firm hereby agrees to employ the Employee and the Employee hereby agrees to work for the Firm in the capacity as a(n) Senior Attorney or any similar position and duties as required by the Firm as it may from time to time deem appropriate. Employee's employment is considered to be "at-will" employment which means that the Firm may terminate the Employee with or without cause, and with or without notice, at any time, at the option of the Firm.

2. **Confidentiality and Non-Disclosure.** Employee remains bound by the Firm's Confidentiality Information and Non-Disclosure Policy found in its Employee Manual. In addition to such policy and since the Firm takes confidential matters very seriously, Employee acknowledges and agrees that the Firm has and will continue to invest a significant amount of time, effort, and expense in developing its confidential and proprietary information described and defined below as "Confidential Information," and the Firm will suffer harm as a result of any act or omission of Employee in violation of this Section 2. Accordingly, as consideration for and as an inducement to the Firm for the Firm to provide the Employee with Confidential Information (defined below) and access to such Confidential Information, Employee makes the following agreement:

    (a)   <u>Non-Disclosure of Confidential Information.</u> Employee agrees that during his/her employment and for all times after his/her separation of employment for any reason, Employee will not make use of or disclose, without the prior consent of the Firm, Confidential Information (defined below) relating to the Firm, or any of its Affiliates or clients, and further agrees, that he/she will return to the Firm at the separation of the Employee's employment or at any other time at the Firm's request all written materials in his/her possession embodying such Confidential Information. For purposes of this Agreement, "Confidential Information" includes information which concerns the affairs of the Firm (including all attorneys employed or contract, all partners, all staff) or its Affiliates or clients and which the Firm could reasonably be expected to desire be held in confidence, or the disclosure of which would likely be detrimental or disadvantageous to the Firm or its Affiliates or clients, and without limiting the generality of the foregoing, such information includes information relating to the licenses, employee training, business operating systems, trade secrets, technologies, services, finances, business plans, marketing plans, legal affairs, vendor lists, client lists and information, potential client information, client referral source contact lists, pricing, terms of contracts with clients, business prospects, business opportunities, personnel assignments, personal information, non-public information, contracts and assets of the Firm, information made available to the Firm by other

parties under a confidential relationship, and information conveyed or assigned to the Firm by Employee or conceived, compiled, created, developed, discovered or obtained by Employee from and during his/her employment relationship with the Firm, whether solely by the Employee or jointly with others.  Confidential Information, however, shall not include information (i) which is, at the time in question, in the public domain through no wrongful act of Employee, (ii) which is later disclosed to Employee by one not under obligations of confidentiality to the Firm or Employee, (iii) which is required by court or governmental order, law or regulation to be disclosed, or (iv) which the Firm has expressly given Employee the right to disclose pursuant to written agreement.

(b)     Breach or Threatened Breach of Covenants.  In the event of a breach or threatened breach by Employee of Employee's obligations under this Section 2, Employee hereby acknowledges and stipulates that the Firm shall not have an adequate remedy at law and shall suffer irreparable harm, and therefore, it is mutually agreed and stipulated by the parties hereto that, in addition to any other remedies at law or in equity which the Firm may have, the Firm shall be entitled to obtain in a court of law and/or equity a temporary and/or permanent injunction: (i) restraining Employee from any further violation or breach of such agreements or covenants; or (ii) compelling Employee's compliance with such agreements or covenants.  The parties agree that if a bond is required to obtain the foregoing injunctive relief, such bond shall be set in the maximum amount of $100.00.

(c)     Notice to Subsequent Employers and/or Business Affiliates.  In the event Employee engages in any conduct which in the Firm's sole opinion constitutes a breach or threatened breach of any of Employee's obligations under this Agreement, the Firm has the right, but not the obligation, to notify Employee's prospective and/or subsequent employer(s) and/or Employee's business affiliate(s) generally: (i) of the existence of this Agreement; (ii) the nature of Employee's breach or threatened breach; and (iii) to make demand that Employee's conduct be immediately brought into compliance with the provisions of this Agreement.  Employee acknowledges and agrees that such notification by the Firm shall not constitute interference with any existing or prospective contracts or business relations between Employee and its prospective and/or subsequent employer(s) and/or business affiliate(s) and Employee hereby waives and releases the Firm from any and all such claims arising in connection therewith.

(d)     Firm's Affiliates.  The provisions of this Section 2 extend to the Firm and the Firm's affiliates, such that any reference to the Firm in this Section 2 encompasses the Firm's Affiliates.  As used in this Agreement, "Affiliates" means all persons and entities directly or indirectly controlling, controlled by or under common control with the Firm, where control may be by management authority, equity interest or otherwise.

3.     *Assignment.*   The Firm shall have the right to assign this Agreement to a successor in interest in connection with a merger, sale of substantially all assets, or the like.

4.     *Survival.*   The provisions of this Agreement shall survive the termination of the Employee's employment hereunder in accordance with their terms.

5.      *Governing Law and Venue.*   Employee resides in the state of Texas and his/her employment services performed for the Firm are based in the State of Texas.   Accordingly, Employee expressly hereby acknowledges and agrees that the provisions in the Section 5 comprise a reasonable agreement between the parties as to the most convenient governing law and venue with respect to any legal action related to this Agreement, to wit:   This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas.   The parties hereto irrevocably submit to the jurisdiction and venue of any state or federal court sitting in or presiding over Corpus Christi, Nueces County, Texas over any suit, action or proceeding arising out of or relating to this Agreement, Employee's employment with the Firm or its Affiliates, the services or work performed by Employee for the Firm or its Affiliates, and/or the compensation paid to Employee by the Firm or its Affiliates.   Venue shall be mandatory, and not permissive.

6.      *Binding Upon Successors.*   This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

7.      *Entire Agreement.*   This Agreement constitutes the entire agreement between the Firm and the Employee with respect to the terms of employment of the Employee by the Firm and supersedes all prior agreements and understandings, whether written or oral, between them concerning such terms of employment.

8.      *Waiver and Amendments; Cumulative Rights and Remedies.*

(a)      This Agreement may be amended, modified or supplemented, and any obligation hereunder may be waived, only by a written instrument executed by the parties hereto. The waiver by either party of a breach of any provision of this Agreement shall not operate as a waiver of any subsequent breach.

(b)      No failure on the part of any party to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver hereof, nor shall any single or partial exercise of any such right or remedy by such party preclude any other or further exercise thereof or the exercise of any other right or remedy.   All rights and remedies hereunder are cumulative and are in addition to all other rights and remedies provided by law, agreement or otherwise.

(c)      The Employee's obligations to the Firm and the Firm's rights and remedies hereunder are in addition to all other obligations of the Employee and rights and remedies of the Firm created pursuant to any other agreement.

9.      *Construction.*   Each party to this Agreement has had the opportunity to review this Agreement with legal counsel.   This Agreement shall not be construed or interpreted against any party on the basis that such party drafted or authored a particular provision, parts of or the entirety of this Agreement.   Any reference to terms herein based on gender such as he or she are to intended to be construed neutrally and bear no representation as to whether the reference is particularly being made regarding the male or female gender.   All headings are intended for

purposes of reference only.

10.     *Severability.*  In the event that any provision or provisions of this Agreement is held to be invalid, illegal or unenforceable by any court of law or otherwise, the remaining provisions of this Agreement shall nevertheless continue to be valid, legal and enforceable as though the invalid or unenforceable parts had not been included therein.  In addition, in such event the parties hereto shall negotiate in good faith to modify this Agreement so as to affect the original intent of the parties as closely as possible with respect to those provisions which were held to be invalid, illegal or unenforceable.

11.     *No Reliance Upon Representations; Informed Consent.*  In executing this Agreement, Employee acknowledges that he/she has read and understands the effect of this Agreement and is executing same of his/her own free will and accord, with full and complete knowledge and authorization thereof, as the case may be, and in the capacity therein stated, and has not relied upon any statements, promises, warranties, or representations made by the Firm or by anyone representing or claiming to represent the Firm, other than as expressly set forth herein, but is making such execution upon his/her own knowledge of and consent to the facts concerning his/her employment relationship and the Agreement.  Employee acknowledges and represents that he/she has entered into this Agreement freely and voluntarily, for valuable consideration, and not by reason of any fraud, duress, undue influence, or mistake.

**IN WITNESS WHEREOF,** the Firm and the Employee have executed this Agreement effective as of the date first above written.

Hilliard Martinez Gonzales, L.L.P.

By: _____

Printed Name: _____

Title: _____

EMPLOYEE:

_____

Date Signed: _____

# Exhibit 2

**From:** Kimberly Beck <kim@becklawcenter.com>
**Sent:** Wednesday, October 7, 2020 10:10 AM
**To:** ███████████████████████████████████     ████████████████████████
████████████████████████████████
**Subject:** ████████ Litigation - This is Kim Beck

Hi ██████████████!
This is Kim Beck.  As you can likely see from my new email address, I have exciting news!  I have separated from HMG and I've started my own firm!  I'm sorry if I was a little cagey about this.  It's always a touchy subject if an attorney leaves and hangs out their own shingle.

I am (hopefully) bringing some of the great help with me from HMG into this new venture.

What this means for you:  I would love for you all to come with me to my firm.  One of my biggest frustrations at HMG was that my team just had so many clients (nearly 25,000 clients!) that cases like ████████ did not always get as much attention as we all felt like they deserved.

The decision is of course yours.  You can stay with HMG, or I can tell HMG to just send me your files and I'll just keep working on the cases as I have been, or you could decide to go with someone else entirely.

It does mean that you will probably want to cancel the zoom for this afternoon.  I will reach out to ██████████████ and let them know that they should go ahead and cancel as well.  Otherwise, I am happy to have a call or zoom with you this afternoon, and we can talk about the change in circumstances, or I can tell you my thoughts about these cases moving forward.  I would just have to send out a different zoom link.

Please let me know what you would like to do both about the zoom call this afternoon and about whether you want to come over to the new firm.
Kim

**EXHIBIT 3**

THE STATE OF TEXAS       §
                                   §

COUNTY OF NUECES       §

---

## AFFIDAVIT OF ROBERT C. HILLIARD IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

---

BEFORE ME, the undersigned authority, on this day personally appeared Robert C. Hilliard, and being duly sworn upon her oath by me, deposed and stated as follows:

1.    My name is Robert C. Hilliard. I am over eighteen (18) years of age. I have never been convicted of a felony and am of sound mind, fully competent to make this declaration. The statements in this affidavit are true and correct and based on my personal knowledge.

2.    I am the Founding Partner of Hilliard Martinez Gonzales LLP ("HMG"), a Corpus Christi law firm that previously employed Kimberly Beck ("Beck"), Defendant in this case. as a Senior Attorney.

3.    This is a suit for breach of contract, tortious interference with existing contracts, a request for an ex parte temporary restraining order, and temporary and permanent injunction.

4.    On November 4, 2019, HMG and Beck entered into a Confidentiality and Non-Disclosure Agreement (the "Agreement") setting forth the terms by which HMG agreed to emply Beck as a Senior Attorney. A true and correct copy of the Agreement is attached as Exhibit 1 to the foregoing Original Petition, Application for Ex Parte Temporary Restraining Order, Request for Injunctive Relief, and Request for Disclosure.

5.    HMG terminated Beck's employment on October 2, 2020. Shortly thereafter, HMG became aware that Beck was contacting HMG's clients and attempting to persuade them to hire Beck as their counsel in their individual personal injury lawsuits. Beginning on October 29, 2020, Beck has transmitted documents to HMG purporting to be signed requests from nearly fifty of HMG's clients that their files be transferred to Ms. Beck. The requests, however, do not state whether each client intends to terminate HMG's representation altogether. Without clarity on that subject, it is impossible for HMG either to continue to represent the client or to properly release its clients' files—which contain protected confidential client information, both privileged and unprivileged—to Beck. Beck has thus used HMG's own Confidential Information to interfere with, obstruct, and frustrate HMG's ability to represent its own clients

6.  As set forth in the Agreement, HMG will suffer irreparable injury if this Court does not issue a temporary restraining order without notice in this case pending a hearing on our application.   Further, Beck has already begun to utilize Confidential Information (as defined by the Agreement) in an improper attempt to contact clients and persuade them to terminate HMG and hire her firm.  Beck will continue to use HMG's Confidential Information in violation of the Agreement unless prevented from doing so by this Court.  While HMG's clients certainly have the right to choose their own counsel, Beck's use of HMG's confidential information following (and perhaps prior to) her departure from HMG violates the Agreement, which she willingly signed and the benefits of which she willingly accepted.

7.  I have personal knowledge of all the facts alleged in this affidavit and in the petition and application for injunctive relief.  I further understand that any false statements made in this affidavit will subject me to the penalties of perjury.

Further Affiant Sayeth Not."

Robert C. Hilliard

SWORN AND SUBSCRIBED TO BEFORE ME, this the 6th day of November, 2020.

Notary Public in and for
The State of Texas

Marion Reilly
My Commission Expires
07/23/2023
ID No. 128569734

2